**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| RS SERVICES OF NORTH AMERICA, | ) | |
| LLC, f/k/a UNIVERSAL SOLUTIONS OF | ) | |
| NORTH AMERICA, LLC | ) | Civil No. 2:09-cv-03152-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BOYLES MOAK BRICKELL | ) | **ORDER** |
| MARCHETTI INSURANCE, INC., | ) | |
| BOYLES MOAK BRICKELL | ) | |
| INSURANCE, INC., BOYLES MOAK & | ) | |
| STONE, INC., and BOYLES MOAK | ) | |
| INSURANCE SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on plaintiff's post-trial motions to order

judgment in its favor on the breach of fiduciary duty claim, deny apportionment for

comparative fault on the breach of fiduciary duty claim, increase the amount of

damages awarded to it, and supplement its motions concerning the breach of fiduciary

duty claim, and defendants' motions for a new trial absolute, new trial nisi remittitur,

new trial under the Thirteenth Juror Doctrine, and a verdict in its favor on the breach

of fiduciary duty claim, or in the alternative, for application of comparative fault to

the breach of fiduciary duty claim.  For the following reasons, the court denies each

of defendants' motions for a new trial and plaintiff's motion to increase damages.

Additionally, three questions of law are certified to the South Carolina Supreme

Court pursuant to South Carolina Appellate Court Rule 244, rendering plaintiff's

motion to supplement moot.

1

## I.   BACKGROUND

Plaintiff RS Services of North America, formerly known as Universal Solutions of North America ("USNA"), sued defendants, collectively referred to as Boyles Moak, for negligence and breach of fiduciary duty.  The basis for USNA's claims is as follows:

USNA was a telecommunications firm, and Boyles Moak served as USNA's insurance broker from 1997 until 2005.  Boyles Moak was paid a commission from the premium of the insurance USNA purchased and did not receive additional compensation from USNA.   Furthermore, there is no evidence that the relationship between the parties was exclusive.  On August 12, 2005, USNA sold most of its assets and some of its liabilities to another company, BlackBox.  The sales contract contained a "Holdback" provision, permitting BlackBox to retain $2.1 million of the purchase price, to be paid in two installations upon verification of presale representations.  The Chief Executive Officer of USNA testified that in May or April of 2005, he informed Boyles Moak that USNA was negotiating with BlackBox for the sale of the company.  Additionally, on August 8, 2005, Boyles Moak advised USNA's Chief Financial Officer that because of the sale to BlackBox, USNA should maintain its Federal Directors & Officers ("D&O") policy and buy an Extended Reporting Period, which cost $60,000.  USNA did as Boyles Moak advised.  USNA never informed Boyles Moak that the sales contract contained a Holdback provision. On October 6, 2006, BlackBox refused to tender the Holdback amounts, which forced USNA to sue BlackBox for the funds.  USNA's insurance did not cover expenses from this litigation, and, therefore, USNA incurred $526,129.39 in attorney's fees and

litigation related expenses.  USNA claimed that Boyles Moak violated its duty to

advise USNA by failing to advise it of a type of insurance known as Representation

and Warranties Insurance ("RWI") that would have covered its only substantial

outstanding risk, BlackBox's refusal to tender the Holdback amount.

Prior to trial, the parties agreed that the court would rule on whether breach of

fiduciary duty was a question for the judge or jury after the completion of the trial,

but that the jury verdict form should include a breach of fiduciary duty question.  At

the end of a two day trial, the jury returned a verdict for USNA for negligence and

breach of fiduciary duty.  The jury determined that USNA's total damages amounted

$315,687.00 and that USNA was 40% responsible for its injuries.

## II.   DISCUSSION

District courts are permitted to grant a new trial after a jury verdict under

Federal Rule of Civil Procedure 59.  A district court should grant a new trial if:  "(1)

the verdict is against the clear weight of the evidence, or (2) is based upon evidence

which is false, or (3) will result in a miscarriage of justice, even though there may be

substantial evidence which would prevent the direction of a verdict."  Cline v. Wal-

Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998).  A review under the first two

prongs

> encompasses a comparison of the factual record and the verdict to
> determine their compatibility.  Consequently, jury determinations of
> factual matters such as liability on a cause of action, liability for
> compensatory and punitive damages, and the amount of compensatory
> damages will be reviewed by determining whether the jury's verdict is
> against the weight of the evidence or based on evidence which is false.

Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 594 (4th Cir.

1996).  "The decision to grant or deny a new trial is within the sound discretion of the

district court." Cline, 144 F.3d at 301.  Boyles Moak argues that it did not have a

duty to advise plaintiff because plaintiff did not rely on its advice and therefore, the

jury verdict was against the clear weight of the evidence and would result in a

miscarriage of justice.  Boyles Moak also claims that there is no evidence of reliance

but does not claim that any specific piece of evidence that may have been relied upon

by the jury was false.

For its negligence claim, USNA was required to show that Boyles Moak had a

duty to advise USNA concerning its insurance needs.  For such a duty to exist, a party

must have expressly or impliedly undertaken a duty to advise the other.  Trotter v.

State Farm Mut. Auto. Ins. Co., 377 S.E.2d 343, 347 (S.C. Ct. App. 1998).

> An implied undertaking may be shown if:  (1) the agent received
> consideration beyond a mere payment of the premium; (2) the insured
> made a clear request for advice; or (3) there is a course of dealing over
> an extended period of time which would put an objectively reasonable
> insurance agent on notice that his advice is being sought and relied on.

Id.

At trial, USNA's former CEO and CFO both testified to a course of dealing

over an extended period of time during which an agent of Boyles Moak advised

USNA concerning its insurance needs and testified that USNA relied on that advice

most of the time.  USNA officials testified about specific examples of advice

provided by Boyles Moak concerning new liability exposure and methods to cover

such exposure, increases in premiums due to the "insurance climate," cancelling

international coverage, switching insurance companies, comparing alternative

insurance options, purchasing an Extended Reporting Period, and maintaining the

D&O insurance.  The former CEO of USNA also testified that Boyles Moak provided

4

USNA advice on many occasions when USNA did not make any request for it and

that USNA consistently took the advice Boyles Moak gave it.  Boyles Moak's

representative also testified that he advised USNA.

      Boyles Moak points to a few specific instances where USNA did not

immediately rely on its advice, claiming that this categorically rules out a sufficient

course of dealing between the parties.  While there must be proof of a course of

dealing existing "over an extended period of time which would put an objectively

reasonable insurance agent on notice that his advice was being sought and relied on,"

it does not follow that USNA has to have relied on Boyles Moak <u>every</u> time Boyles

Moak gave advice.  Based on the testimony and evidence discussed above, a

reasonable fact finder could conclude that the character of the extended course of

dealing put Boyles Moak on notice that its advice was being sought and relied upon.

The verdict, therefore, is not against the weight of the evidence and does not result in

a miscarriage of justice.

      Boyles Moak also requests a new trial nisi remittitur, which is analyzed under

the same standard as a new trial absolute.  <u>Atlas Food Sys. & Servs., Inc.</u>, 99 F.3d at

593.  If the verdict and the factual record are compatible concerning the amount of

damages and the verdict will not produce a miscarriage of justice, a new trial nisi

remittitur should not be granted.  Boyles Moak argues that the verdict should be

decreased because the jury failed to deduct enough money from plaintiff's damages

award to cover an appropriate RWI premium and deductible.  In response, plaintiff

argues:  (1) the jury should not have taken out <u>any</u> deductible or premium because

those funds could have been woven into the sales contract between BlackBox and

USNA; (2) USNA would not have had to spend $60,000 for the Extended Reporting

Period premium and that $60,000 premium should suffice for the RWI premium; and

(3) the uncertainty concerning the amount of deductible and premium was produced

by Boyles Moak's failure to advise it of RWI, thus, the uncertainty should not be held

against USNA.

Plaintiff requested $526,129.39 for costs, expenses, and attorney's fees in the

BlackBox litigation.  The jury awarded USNA "total" damages of $315,687.00, thus

having subtracted $210,442.39.  Boyles Moak argues that the jury should have

subtracted $250,000, the premium for the RWI insurance, and another $100,000 for

the deductible.  Only one witness testified to premium and deductible amounts for

RWI.  This defense witness testified that in his business working in the insurance

field, but not for Boyles Moak, $250,000 would be the low end of the range for

premiums.  He also testified that RWI is tailor made, so there is not a standard

available fee, and it would be impossible to determine what premium or deductible

would have been appropriate.  Finally, the jury could have believed that plaintiff

would not have purchased the Extended Reporting Period for $60,000 if Boyles Moak

had advised it of the RWI.

"Where the wrongful act of the defendant is of such nature as to prevent

determination of the exact amount of damages, the defendant is not allowed to insist

on absolute certainty, but only that the evidence show lost profits by reasonable

inference."  Minter v. GOCT, Inc., 473 S.E.2d 67, 70 (S.C. Ct. App. 1996).  The

jury's deduction was not clearly outside of a reasonable range for a premium and

deductible.  The jury verdict is not against the clear weight of the evidence and does

6

not result in a miscarriage of justice.  This court, therefore, denies Boyles Moak's

motion for a new trial nisi remittitur.

Separately, plaintiff requests that the court increase its damages and award it

the original $526.129.39 it requested.  Plaintiff complains that the jury's verdict for

total damages is almost 60% of the damages it requested, mirroring the amount of

liability the jury attributed to Boyles Moak.  A similarity between the amount the jury

accounted for a RWI deductible and premium and the amount of plaintiff's own

responsibility for its injuries is not a sufficient reason to necessitate amending the

verdict.  Furthermore, both parties agreed to the verdict form and the evidence

supports a deduction for a premium and deductible from plaintiff's requested

damages.  The factual record and the terms of the verdict form support rather than

undermine the jury's verdict, thus, an increase in damages is inappropriate.

### III.   CERTIFIED QUESTIONS

For the foregoing reasons, the court **DENIES** defendants' motions for a new

trial on plaintiff's negligence claim, **DENIES** plaintiff's motion to amend the verdict,

and **FINDS AS MOOT** plaintiff's motion to supplement.[1]

It is **ORDERED** that the following questions be **CERTIFIED** to the

South Carolina Supreme Court:

1.     Does a fiduciary relationship exist between an insurance broker and a
       business, when the broker is paid on commission from the insurance the
       business purchases and the parties have not entered into a mutually binding
       contract?
2.     If so, does this fiduciary relationship create a duty to advise when the business
       has provided the broker some, but not all, relevant information upon which the
       broker could have provided advice?
3.     Does comparative fault apply to a breach of fiduciary duty claim?

---

[1] Plaintiff's motion to supplement only addresses issues which are being certified to the South Carolina
Supreme Court.

**AND IT IS SO ORDERED**.

_____     _____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**November 30, 2011**
**Charleston, South Carolina**